## ALDENDERFER v. SPANGLER

Ohio Appeals, 4th Dist., Pickaway Co.

Decided Jan. 19, 1926

485. EXECUTORS & ADMINISTRATORS —Power to sell conferred on executor can only be exercised in manner and at times prescribed in will.

1271. WILLS—Where executor is authorized in a will to sell land only after death of widow and to divide proceeds, voluntary conveyance of life estate by widow does not accelerate remainders, and no acceleration of power to sell exists.

MAUCK, P. J.

The executor of the last will of Aaron Spangler, deceased, filed his petition in the Pickaway Common Pleas, attaching a copy of the will and doubting his power to sell thereunder. He also asked for the power to sell said estate. The provision of the will in substance was that after the death of the testator's wife, certain real estate was to be sold by the executor and divided in five parts and given to certain beneficiaries. The will was duly probated and the widow accepted thereunder. Since her acceptance she has made a conveyance of her life estate to the beneficiaries.

It is claimed by Aldenderfer et al. that they had a vested remainder by the will, and the life estate of the widow by deed, and no reason exists why the power to sell should not now be exercised. This case upon these facts comes in the court on appeal.

The Court of Appeals held:

1. The power of an executor does not proceed from the interests of the devisees, and is not affected by the character of such interests. It arises from the language of the testator conferring the power to sell and can only be exercised in the manner prescribed by will. 24 CJ. 170.

2. It is forcibly argued that the remainderman's estate has been accelerated by acquisition of the life estate and that the power of the executor has likewise been accelerated.

3. The Supreme Court in the leading case on the doctrnie of acceleration says, that the remainder estate is accelerated, "in every event which removes the prior estate out of the way". 78 OS. 276.

4. The words of the Supreme Court are not explained, but in 220 Ill. 480 where similar facts were presented the court held:—"the conveyance of the life estate to another does not amount to a destruction or a removal thereof."

5. In view of the fact that the Ohio and Illinois courts have both adopted from Jarman on Wills (Vol. 1, p. 568) the doctrine of acceleration and the Illinois case holds that conveyance of life estate is not such removal, it follows that there has been no acceleration in this case.

6. By item seven of the will the testator further provided that other property owned by him should be sold by the executor during life of the widow but the proceeds should not be fully distributed, the executor being required to hold same to pay for taxes and upkeep on this property of the widow.

7. To permit a sale of the lands would not only violate item five, but would render futile item seven and to grant the prayer of the petition would not promote the inetntions of the testator.

Petition dismissed.

(Sayre & Middleton, JJ., concur.)

Attorneys—Barton Walters, Circleville, for Aldenderfer.

---

## No. 89

## REES et v. BURTNER COAL CO.

Ohio Appeals, 2nd Dist., Franklin Co.

No. 1496. Nov. 5, 1926

565. FREIGHT—Where contract for shipment of coal stipulates a rate f. o. b. at the mines and the freight rate was not guaranteed by the consignor and correspondence referring to the freight rate was not made a part of the final contract, the freight arte is not to be included as part of the shipping contract.

BY THE COURT.

This action was brought in the Franklin Common Pleas by the Burtner Coal Co. against the partnership known as the Swift Run Coal Co. upon an account for coal shipped from the mines of the plaintiff to Groveport. All the correspondence was offered in evidence and attached to the bill of exceptions. The judgment in the lower court was for the Burtner Co., and error was prosecuted. The Court of Appeals held:

1. The sole question is as to whether the freight rate on the coal shipped was guaranteed by the plaintiff in connection with and as part of the shipping contract.

2. An order of July 16, 1925, which was signed by both parties is the contract under which the coal was shipped.

3. That contract stipulates a rate f. o. b. at the mines and contains no reference to the freight rate.

4. Previous correspondence referred to the freight rate but same was not guaranteed or made part of the final contract between the parties.

Judgment therefore affirmed.

(Allread, Ferneding & Kunkle, JJ., concur.)

Attorneys—C. S. Druggan and Paul R. Gingher for Rees et; Ingalls, Landis & Selby for Company; all of Columbus.